Kansas City, Memphis & Birmingham R. R. Co.
*v.* D. A. Holland.

1. Railroads.  *Carriers of live stock.   Special contract.   Acceptance of car.*
   Where a shipper agreed with the agent of a railroad company to accept a box-car for the shipment of live stock, provided the doors were left open and slatted, and afterwards the stock were loaded on the car by the company's servants, and the shipper was required to sign a special contract of affreightment reciting, among other things, that he had examined the car and accepted it, such contract was properly construed as an acceptance of the car only if opened and slatted as previously agreed.

2. Same.  *Negligence.   Question of fact.*
   Notwithstanding said special contract, if the car was not in fact opened and slatted, and an animal thus shipped in it died while in transit, and the owner sued the company for its value, claiming that the car was insufficiently ventilated, the question of the suitableness of the car as provided by the company was properly left to the jury.

3. SAME.   *Special contract, exempting from liability.   Case in judgment.*
      The said special contract contained the further agreement that the shipper
         assumed all risk of injury to the animals "in consequence of heat, suf-
         focation, or other ill effects of being crowded in the cars."   *Held,* in the
         absence of evidence that the animal died from crowding of the car with
         stock, the company was not released from liability for the death conse-
         quent upon insufficient ventilation of the car, this not being a risk
         assumed by the shipper.

FROM the circuit court of Union county.

HON. W. M. ROGERS, Judge.

The appellee, Holland, brought this suit against appellant to re-
cover the value of a jackass, which he had shipped from Memphis,
Tenn., over appellant's railroad, to be delivered at New Albany,
Miss., and which died on the route.   The animal was shipped
along with four mules under a special live-stock contract.   When
the agent of the appellee made application to the agent of appellant
in Memphis for a car in which to ship the stock, the latter informed
the agent of appellee that the company did not have on hand a
stock-car, but could furnish a box-car, if that would answer, to
which the agent of appellee replied that it would if the doors were
open and slatted.   The rate was agreed upon and the stock were
delivered to the agents of appellant, who took complete control of
them, and loaded them in the car.   Before the car left, appellee,
intending as was usual in such cases to accompany the stock, ap-
plied to the agent of appellant to know if the stock had been prop-
erly loaded, whereupon the agent handed him a special contract
already prepared and asked him to sign it, which he did.   Just
before the train started appellee was informed by some one that his
stock were suffering from suffocation in the car, and then for the
first time he discovered that the doors of the box-car were only
slightly opened and that the animals were seemingly prostrated
with heat.   He endeavored to make the opening larger, but was
prevented by the starting of the car.   At the first stopping-place,
twelve miles from Memphis, appellee asked the conductor if he would
have time to go and examine his stock, but was told that the train
might start at any moment; but, following the advice of the con-
ductor, he went along the top of the freight train to the car in

which his stock were confined, and found that the ass was already dead and the mules in great distress.

The defendant company seeks to avoid liability under the special contract signed by the plaintiff, which, among other things, contained the agreement quoted in the opinion that the shipper, having examined the car, accepted it to be used for the transportation of his stock, and assumed all risk in consequence of heat or suffocation or other ill effects of the stock being crowded in the cars. There was evidence tending to show that the car in the condition in which it was provided was not suitably ventilated, but the evidence on this point was conflicting.    Plaintiff recovered.

Motion for a new trial was overruled, and the defendant appealed.

*J. W. Buchanan* and *Wallace Pratt,* for appellant.

It is not contended that the special contract would relieve from liability for negligence in not having a proper road-bed or track, or in not properly handling the train, or promptly delivering the animal.    These are matters alone in the control of the company ; but it does relieve as to those matters in which the shipper has as much control and judgment as the employés of the company.    The plaintiff had full notice of the kind of car to be furnished.    He declined to wait until a stock-car could be procured.    Having seen the car and judged of its suitableness, he signed the special contract reciting that he had examined the car and found it suitable, agreeing to assume all risk in consequence of heat or suffocation.    If there had been any latent defect in the car, another inquiry would be presented, but this is not claimed.    It was competent for the carrier to make this special contract relieving itself from liability.

We submit that under the issues presented, and under this contract, the testimony as to the condition of the car should have been excluded.

Argued orally by *J. W. Buchanan,* for appellant.

*G. L. Jones,* for appellee.

The verdict is amply supported by the evidence, and should be sustained.    *R. R. Co.* v. *Williams,* 67 Miss. 18.

The railroad company could not stipulate for exemption from

liability for losses occurring from its own negligence.  *R. R. Co.*
v. *Moss,* 60 Miss. 1003 ; *R. R. Co.* v. *Abels,* Ib. 1017.

It was the duty of the company to furnish suitable and safe
transportation, exercising such care as the nature of the property
shipped required.  *R. R. Co.* v. *Haynes,* 63 Miss. 485 ; *Ry. Co.*
v. *Bigger,* 66 Ib. 319 ; 41 Ill. 73 ; 41 Alabama, 667 ; 17 Mich.
57 ; 18 Ib. 427.

The agents of appellant failed to slat the doors as they were told
would be required to make the car suitable.  The evidence that
death resulted from suffocation is overwhelming.

*G. L. Jones,* for appellee, made an oral argument.

Woods, C. J., delivered the opinion of the court.

The fair construction of the special contract, relied upon by ap-
pellant to defeat a recovery in this suit, will require us to hold that
the acceptance of the box-car, by the appellee, for the transporta-
tion of his stock, in no event went further than an acceptance of
such box-car when the open door of the same had been properly
slatted, as had been stipulated for before the special contract had
been signed.  In the face of the undisputed evidence that the door
of the box-car furnished was not open and slatted, the suitableness
of the conveyance, in the condition in which it was used in the
transportation of the appellee's stock, was clearly a proper question
to be submitted to the jury.

It is clear, likewise, that the death of the jack resulted from a
cause other than those against whose occurrence the appellee
assumed the risk in the special contract.   The special contract con-
tains this agreement, viz: "And the said party of the second part
having examined the same, hereby accepts for such transportation
the cars provided by said company to be used for the transporta-
tion of said stock, and hereby assumes all risk of injury which the
animals, or either of them, may receive in consequence of any of
them being wild, unruly or weak, or by maiming each other or
themselves, or in consequence of heat or suffocation, or other ill-
effects of being crowded in the cars, etc. etc."

There was much evidence which showed, or tended to show, that the animal died from suffocation by reason of the insufficiency of ventilation of the car. There is no particle of the evidence which even points at death from suffocation in consequence of the car being crowded with animals. The special contract sought to relieve the company from liability for injury to the stock from crowding the car with stock; but injury in consequence of insufficiency in ventilation in the car furnished and used was not one of the risks assumed by the shipper when he signed the special contract.

Entertaining these opinions, there was no error of the court below, either in submitting evidence of the unsuitableness of the car, or in the giving and refusing of the instructions to which exception was taken.

*Affirmed.*